# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | |
|---|---|
| DARREN J. WINANS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 15-0729-CV-W-DW-P |
| | ) |
| RONDA PASH, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, who is currently confined at the Crossroads Correctional Center in Cameron, Missouri, has filed pro se a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner seeks to challenge his 2011 convictions and sentences for two counts of murder in the second degree, two counts of armed criminal action, and one count of burglary in the first degree, which were entered in the Circuit Court of Jasper County, Missouri, after he pleaded guilty to those offenses.

Petitioner asserts two (2) grounds for relief: (1) that plea counsel was ineffective for failing to file a motion to suppress incriminating statements petitioner made to Dr. Tammy Neil; and (2) that trial counsel was ineffective for failing to file a motion for change of judge due to alleged statements made by the judge during ex parte communication with the prosecutor. Respondent contends that Ground 1 is without merit and that Ground 2 is procedurally barred.

## FACTUAL BACKGROUND

On appeal from the denial of petitioner's Rule 24.035 post-conviction relief motion, the Missouri Court of Appeals, Southern District, summarized the facts of the case:

On September 1, 2009, Winans and Matthew Laurin ("Laurin") were each

charged with two counts of the class A felony of first-degree murder, in violation of section 565.020; two counts of felony armed criminal action, in violation of section 571.015; and one count of the class B felony of first-degree burglary, in violation of section 569.160, following the October 11, 2008 stabbing deaths of Robert and Ellen Sheldon. The cases were later severed.

After Winans behaved erratically during booking at the Jasper County Jail, Winans was evaluated by Dr. Tammy Neil ("Dr. Neil"), a psychologist and medical provider utilized by the jail. Dr. Neil prepared a one-page report summarizing the evaluation.

On January 15, 2010, the State filed a notice of aggravating circumstances and its intent to seek the death penalty against Winans. Two attorneys from the Capital Litigation Division of the Missouri State Public Defender's Office, Charlie Moreland ("Moreland") and Tom Marshall ("Marshall") (collectively "defense counsel"), entered an appearance on Winans' behalf.

The State provided defense counsel with a copy of Dr. Neil's report, and defense counsel later deposed Dr. Neil about her report. The report purportedly stated that Winans made "admissions relative to the charges in this case" to Dr. Neil. Specifically, Winans admitted he had been involved in the planning and execution of the robbery that resulted in the victims' deaths, and that he was on drugs at the time.

On February 28, 2011, the parties appeared before the court to announce a plea agreement as contained in a "Petition to Enter plea of Guilty" that had been explained to and signed by Winans. Defense counsel also signed the petition and affirmed they had "investigated the circumstances of this case and have explored all avenues leading to the facts relevant to guilt and degree of guilt or penalty."

As part of Winans' plea of guilty, the State agreed to file an amended information reducing the charges on the two murder counts from first-degree felony murder to second-degree felony murder; Winans would plead guilty to all the charges contained in the amended information, including the armed criminal action and the burglary charges; and Winans would receive sentences of life imprisonment on the two felony murder counts. The parties also agreed that a sentencing hearing would be held during which the sentences for the remaining charges would be decided and a determination made whether the sentences imposed, including the two life sentences, would be served concurrently or consecutively.

Upon examination by the plea court, Winans stated that: (1) defense counsel had explained the charges against him, and advised him of any and all possible defenses he might have; (2) he acknowledged the rights he was waiving by

pleading guilty; and (3) he believed he would not be found innocent by a jury. The plea court expressly advised Winans that he would lose the "right to file pretrial motions to suppress or try to keep certain items out of evidence" if he pleaded guilty. Winans acknowledged that right and stated he still wished to plead guilty.

In the prosecutor's recitation of the factual basis for the charges, he described a scene in which the victims' son found his parents (and the family dog) stabbed to death in their home. Winans and Laurin went to the Old Cabin Shop—owned by victims—to steal guns. While in the shop, they heard a dog bark and Laurin ran into the residential section of the building. Thereafter, Winans stated he "heard the noises that were made inside and he knew that what happened in there was not good." Winans then went into the house, saw blood, and described it as "the awfulist [sic] thing that he had ever seen in his life[.]" Winans and Laurin took guns from the shop and left, later burning their clothes to hide evidence. Winans made statements to his girlfriend's mother admitting to the plan to go to the Old Cabin Shop to steal guns. The prosecutor also mentioned Winans had made statements to Dr. Neil at the Jasper County Jail, but nothing specific was attributed to her.

The plea court found Winans' plea was voluntarily and intelligently entered and that a factual basis existed for the plea. The plea court accepted Winans' guilty plea, ordered a sentencing assessment report, and scheduled a sentencing hearing. Following the sentencing hearing, the plea court imposed sentences of life imprisonment on the second-degree murder charges, twenty years for each armed criminal action charge, and fifteen years on the burglary charge, all to be served consecutively.

Respondent's Exhibit F, pp. 2-4 (internal footnotes omitted).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State

support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUND 1 - INEFFECTIVE ASSISTANCE OF PLEA COUNSEL**

In Ground 1, petitioner contends that plea counsel was ineffective for failing to file a motion to suppress incriminating statements petitioner made to Dr. Tammy Neil, a jail psychologist. Petitioner contends that if he would have known that "her testimony could not be used against him as evidence of his guilt[,]" then there is a reasonable probability that he would have not pleaded guilty.

In order to succeed on a claim of ineffective assistance of plea counsel, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. 668, 687-90 (1984).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . ." Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. There is a "strong

---

court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.   This Court may not grant habeas relief unless the state court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland."   Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

The Missouri Court of Appeals, Southern District, found that the motion court's judgment was supported by the record:

> Winans argues that his plea counsel was ineffective in failing to file a motion to suppress incriminating statements Winans made to Dr. Neil.
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.
>
> **Strickland v. Washington**, 466 U.S. 668, 687 (1984). Specifically, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential[.] . . . A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.
>
> Second, the defendant must show prejudice from his counsel's deficient conduct. *Id.* at 687. "To show prejudice when challenging a guilty plea, the movant must allege facts showing that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." **Davis v. State**, 435 S.W.3d 113, 116 (Mo.App. E.D. 2014) (internal quotation and citation omitted). "[F]ollowing a guilty plea, the effectiveness of counsel is relevant only to the extent that it affected whether or not the plea was made voluntarily and knowingly." *Id.* (internal quotation and citation omitted).
>
> Here, the motion court specifically found that:
>
> It is clear from the testimony that such a motion would have been filed prior to any trial on the charge of first degree murder. The law is clear that any

> complaint about failure to file a motion to suppress is waived by the voluntary entering of a plea of guilty, State v. Smith[,] 972 S.W.2d 551 [(Mo.App. S.D. 1998)]. In this case it is clear that one would have been filed if the case proceeded to trial and that the process was explained to Movant.
>
> The motion court found that Winans was informed that if he proceeded to trial, a motion to suppress Dr. Neil's testimony would be filed, and that he was informed regarding the process associated with a suppression motion. Likewise, because Winans' plea was voluntary, his complaint about defense counsel's failure to file a motion to suppress was waived. As we have reiterated since **Smith**, "[a] claim that counsel was ineffective for failing to file and pursue a motion to suppress is waived by the voluntary entry of a guilty plea." **Lynn v. State**, 417 S.W.3d 789, 804 (Mo.App. E.D. 2013) (internal quotation and citation omitted).
>
> The motion court did not clearly err in denying post-conviction relief. Point denied. The judgment of the motion court is affirmed.

Respondent's Exhibit F, pp. 6-8 (internal footnotes omitted).

The decision of the Missouri Court of Appeals is reasonable and therefore is entitled to deference under § 2254(d). The resolution of Ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[2] Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that counsel

---

[2] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

was not ineffective.

Ground 1 is denied.

## **GROUND 2 – PROCEDURAL DEFAULT**

In Ground 2, petitioner contends that trial counsel was ineffective for failing to file a motion for change of judge due to alleged statements made by the judge during ex parte communication with the prosecutor. Respondent contends that Ground 2 is procedurally defaulted.

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner did not raise Ground 2 on appeal from the denial of his amended Rule 24.035 motion. Therefore, Ground 2 is procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why this ground was not pursued on

appeal from the denial of his amended Rule 24.035 motion and, therefore, has failed to demonstrate cause for his procedural default. As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of Ground 2. He does not show that a manifest injustice will occur if this ground is not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of Ground 2 is barred.

Ground 2 will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is **DENIED**;

(2) this case is **DISMISSED** with prejudice; and

(3) a certificate of appealability is **DENIED**.

                                                       /s/ Dean Whipple
                                                      DEAN WHIPPLE
                                                      UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  February 26, 2016 .